

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable E. L. Shelton
County Auditor
Johnson County
Cleburne, Texas

Dear Sir:

Opinion No. O-1351
Re: Upon the basis of the facts
presented, does the Elum
School District have a legal
and lawful claim to that part
of the Joseph Dickson Survey
that is covered by the Peti-
tion of E C. Johnson and
others as presented to and
accepted by the Rio Vista
School District Board of May
25, 1906?

From your letter of recent date and from an
investigation of the records in the Department of Educa-
tion, we are possessed of the following facts:

Some years prior to 1906 certain terri-
tory in Hill County constituted the Mustang
School District, which apparently enjoyed
the status of a common school district. Long
before 1906 it had been discontinued as a
school district and its territory was left
unclaimed by any school district. Included
in the Mustang School District is the Joseph
Dickson survey which was adjacent to the D.
Moore Survey. The latter survey lies partly in
Johnson County and partly in Hill County.

On May 25, 1906, a majority of the qual-
ified voters living within the bounds of the

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. E. L. Shelton, Page 2

Joseph Dickson Survey and occupying a portion of that survey, filed a petition with the president of the Board of Trustees of the Rio Vista Independent School District, which district was located within the bounds of Johnson County, declaring their desire to become a part of the Rio Vista School District. Pursuant to this petition, the Board of Trustees of the Rio Vista Independent School District, by resolution, incorporated into and made part of the Rio Vista Independent School District this particular portion of the Joseph Dickson Survey. This resolution, which is recorded in the county court records, reads as follows:

"On this the 25th day of May 1906 the President of the Board of Trustees submitted to the board the petition in writing of E. C. Johnson and five other persons which petition had been duly filed with the President of the Board, praying that the territory hereinafter described be received as an addition to and to become part of the Rio Vista Independent School District, and the board having considered said petition the affidavit of three of the subscribers thereof attached thereto, and all the facts in connection therewith is of the opinion and upon investigation finds the facts to be that the proposed addition will not increase the corporate limits of said Rio Vista Independent School District so that the whole when thus increased, will not exceed Twenty Five Square Miles, and that the signers of said petition constitute a majority of the resident qualified voters of said territory; therefore, Be it Resolved by the Board of Trustees of the said Rio Vista Independent School District that the following described territory, being the same territory which is described in said petition be, and the same hereby is received as an addition to and to become a part of the corporate limits of the said Rio Vista Independent School District."

Subsequently, on October 16, 1906, under and by virtue of an order issued by the County Judge of Hill County, an election was held at Blum, Texas, which apparently had as its objective the formation

of the Blum Independent School District.
We have ascertained from the Department
of Education that the Blum School District
became an independent School district on
their records in November, 1906.  The entire
Joseph Dickson Survey, including that portion
thereof which had previously petitioned to
become a part of the Rio Vista Independent
School District, was made a part of the new
Blum Independent School District by virtue
of that election.

The Rio Vista School District in
Johnson County was incorporated in 1903
as a town for school purposes only, under
general laws, in compliance with the Act
of 1875, according to the records of the
Department of Education, and is still a
valid independent school district.

You submit for the opinion of this department
two questions, which we quote as follows:

"1.  Upon the basis of the facts presented,
does the Blum School District have a legal and
lawful claim to that part of the Joseph Dickson
Survey that is covered by the petition of E. C.
Johnson and others as presented to and accepted
by the Rio Vista School Board of May 25th, 1906?

"2.  If the Blum School District does
not and cannot establish legal ownership of
said territory in question, can the Rio Vista
School District bring suit and collect the
school taxes that have been paid to the Blum
School District by the people residing within
the metes and bounds of said disputed terri-
tory for the last twenty-five years or longer?"

It is apparent from a reading of the resolution
adopted by the Board of Trustees of the Rio Vista Indepen-
dent School District and from facts contained in your
letter that such Board and the petitioners in the dis-
puted portion of the Joseph Dickson Survey sought to com-
ply with the provisions of Sec. 153, Chap. 134, Acts of
1905, 29th Legislature, pp.303,304, in their efforts to

Hon. E. L. Shelton, Page 4

extend the district boundaries to include that area.
This section which was carried unchanged into the re-
vision of 1911 as Article 2865 and into the revision
of 1925 as Article 2765, prior to its repeal in 1929,
read as follows:

"Whenever the territory heretofore incor-
porated, or which may hereafter be incorpo-
rated, for free school purposes, shall contain
less than twenty-five square miles, and there-
after the majority of the inhabitants, qualified
to vote for members of the Legislature, of any
territory adjoining the limits of the town and
village so incorporated, shall desire such
territory to be added to and become a part of
such incorporated town or village for free school
purposes only, and a majority of such qualified
voters sign a petition to that effect, any three
of such qualified voters may file with the pres-
ident of the Board of Trustees of such incorpo-
rated town or village the said petition, fully
describing by metes and bounds the territory
proposed to be annexed and showing its location
with reference to the existing territory of the
town or village already incorporated, provided
that said territory proposed to be added must be
contiguous to one line of said corporation.
Upon so filing said petition, affidavits and des-
criptions, said president shall submit the same
to the board, and, if upon investigation by the
Board it is found that the proposed addition
will not increase the corporate limits so that
the whole, when so increased will exceed twenty-
five square miles, the said board of trustees,
by resolution duly entered upon its minutes, may
receive such proposed territory as an addition to,
and become a part of, the corporate limits of such
town or village; a copy of which resolution, con-
taining a description of the added territory, shall
be filed for record in the county clerk's office of
the county in which said town or village is sit-
uated, after which the territory so received
shall be a part of said town or village; . . ."

Before entering into a discussion of the legality
of the action of the Hill County and Blum School District

Hon. E. L. Shelton, Page 5


authorities let us first determine whether or not there
existed at that time any statutory or constitutional
authority for the annexation of the disputed area to the
Rio Vista Independent School District.

In 1906, Sec. 3 of Article VII of the Consti-
tution, which authorized the Legislature to form school
districts read as follows:

" . . . and the Legislature may also
provide for the formation of school districts
within all or any of the counties of this
State by general or special laws . . ."

In addition to Section 153, which we quoted
above, there was on the statute books at that time a pro-
vision for the formation of school districts containing
parts of two or more counties, called county-line school
districts. Section 55, Chapter 124, Acts of 1905, 29th
Legislature. These two statutes were integral parts of
the "School Code".

No specific language is to be found in Section 153
permitting the extension of Independent School District
boundaries to include territory in more than a single county,
but the fact that Section 55 dealt with the same general
subject and was contained in the same body of law gave
these districts, under recognized rules of statutory con-
struction, implied authority to so extend their boundaries.
Carlton Independent School District v. Jordon, et al, (Civ.
App., Eastland, 1928) 9 S. W. (2d) 384; reversed in part,
(Comm. App., Sec. B, 1930) 25 S. W. (2d) 610. See also 39
Tex. Jur., Section 135.

In 1908, however, the Supreme Court determined
that the Legislature had no authority to authorize the
formation of school districts lying partly in different
counties, or so-called county-line districts, and that
Section 3 of Article VII of the Constitution required that
all school districts be kept within county boundaries.
Parks v. West, 102 Tex. 11, 111 S. W. 726.

All acts by the Legislature authorizing the
formation of districts containing parts of two or more
counties were thus held unconstitutional. Necessarily
any implied authority attributed to independent districts

to extend their boundaries across county lines under Section 153 was also unconstitutional.

The legislative authority under which the Rio Vista Independent School District purported to act being unconstitutional, its attempt to annex the disputed area in Hill County was likewise invalid and did not affect the status of that area as unclaimed territory. The Rio Vista district had no prior claim to this area, and the Blum district had a right, at that time, to include it within its boundaries.

However, after the decision in Parks v. West, Section 3 of Article VII of the Constitution, was amended on September 24, 1909. The amendment, in addition to supplying the necessary constitutional authority to the Legislature to provide for the formation of school districts composed of parts of two or more counties, validated all prior existing county-line districts.

The portion of the amendment providing the Legislature with authority to form districts crossing county lines was purely enabling and was in no sense self-executing, as pointed out in Carlton Independent School District v. Jordon, supra:

"Had the Legislature never seen fit (thereafter) to provide for the formation of districts lying partly in two or more counties, none ever could have lawfully existed, save and except those which by the same constitutional amendment had been expressly validated."

The Legislature did not exercise its power under the amendment until 1911, at which time it provided for the formation of county-line districts in Chapter 100, p. 200, General Laws of 1911. The provisions of Section 153, Acts of 1905, were at that time re-enacted, unchanged, in the codification of 1911 as Article 2865, as noted above. Thus prior to 1911 no authority existed in the Texas statutes for the formation of districts composed of two or more counties or for the extension of district boundaries across county lines. Carlton Independent School District v. Jordon, supra.

Since the legislative acts, expressly or impliedly permitting county-line districts were invalid at the time of their enactment, no subsequent amendment to the Constitution, authorizing the Legislature to provide for the formation of county-line districts, would have the effect to re-enact them and thus to infuse life into a thing that never had existence. Seneca Mining Co. v. Secretary of State, 82 Mich. 573, 47 N. W. 25, 9 L. R. A. 770; Banaz v. Smith, 133 Cal. 102, 65 P. 309; State ex rel Stevenson v. Tufly, 20 Nev. 427, 22 P. 1054, 19 Am. St. Rep. 374; Carlton Ind. School Dist. v. Jordon, supra.

We turn now to the validating portion of the amendment of 1909, which appears in our present constitution as Section 3a of Article VII. This section reads as follows:

"Every school district heretofore formed, whether formed under the general laws or by special act, and whether the territory embraced within its boundaries lies wholly within a single county or partly in two or more counties, is hereby declared to be, and from its formation to have been, a valid and lawful district. . ."

It was held by the Supreme Court in Gillespie et al v. Lightfoot, Attorney General, 103 Tex. 359, 127 S. W. 799 (1910), that the defect in county-line districts due to want of constitutional authority to form them was cured by this portion of the amendment of 1909, and that all such districts, which had not been previously dissolved by legal means, were thereby declared to have been valid from the time of their formation.

The court in that case was concerned with a county-line district which was formed as such. We have been unable to find any case which involved the question of whether the amendment of 1909 would also have the effect of validating a district, wholly within a county at the time of its formation, as to territory in another county added prior to the adoption of the amendment but after its formation.

It is our opinion, however, that the amendment did not have that effect for three reasons:

1. Section 3a of Article VII is limited in its scope to districts which had no valid existence in

Hon. E. L. Shelton, Page 8

the light of Parks v. West because no valid law
authorized their formation.

> "It is easy to see that a purpose,
> probably the main purpose of the amendment,
> was to save from destruction the county-
> line districts affected by the decision
> referred to. That much is certain from
> the history as well as from the language
> of the amendment." Gillespie v. Lightfoot,
> supra.

Those districts which were not so affected by
the decision in Parks v. West and those whose valid
existence was unquestioned needed no such assistance.

2.  The amendment did not concern itself with
validating unauthorized actions by validly existing
districts, but only with circumventing original lack
of constitutional authority for the formation of those
which had no valid existence.

> "Its (Sec. 3a of Art. VII) interpretation
> literally might establish the validity past and present
> of every school district that had at any time before its
> adoption been formed in Texas by general or special law,
> although it may long ago have passed out of existence
> and been absorbed by other organizations. Of course, its
> purpose was not so comprehensive. Unquestionably, it was
> intended to give constitutional and legal sanction to
> such districts as for want of it were invalid, to save
> and not to destroy rights." Gillespie v. Lightfoot, supra.

3.  The amendment, as we have noted, did not
have the effect of validating the statutes declared un-
constitutional by Parks v. West. Those statutes under
which the Rio Vista district purported to act were un-
constitutional at the time of the annexation and continued
to be invalid after the adoption of the amendment until
their re-enactment. Carlton Independent School District
v. Jordan, supra.

We conclude, therefore, that the Rio Vista
Independent School District which at the time lay wholly
in Johnson County had no authority in 1906 to incorporate
within its boundaries territory that lay in Hill County
and that its purported annexation of such territory was

invalid. Since the disputed portion of the Joseph Dickson Survey could not have been validly annexed to that district, it follows that the Blum School District at the time it acted had the right to include it within its boundaries and that if all the requirements of Section 149, Acts 1905 were complied with (and we have no reason to believe they were not), its action in so doing was valid and the entire Joseph Dickson Survey then became part of that district.

Although we base our conclusion on the construction that the validating portion of the Amendment of 1909 was intended to infuse life into districts whose valid existence was denied by the decision in Parks v. West and was not concerned with additions of territory to valid districts, we need not rely exclusively on that ground.

We do not believe that any court will look with favor on a claim such as this which has been permitted to lie dormant for more than 33 years.

The Blum Independent School District became a rural high school district in 1929. Such districts were validated in all respects by three enactments of the 41st Legislature. See Article 2802a, Article 2742i and Article 2742j, Sec. 2.

Our conclusion in regard to your first question makes unnecessary an answer to your second question.

Trusting that the foregoing information will fully answer your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By  _Robert E. Kepke_
Robert E. Kepke
Assistant

APPROVED DEC 23, 1939
_Gerald C. Mann_
ATTORNEY GENERAL OF TEXAS

By  _Peter Maniscalco_
Peter Maniscalco

PM:bt